IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGE MURRAY                           :

    Petitioner                          :

        v.                           :          Civil Action No.: DKC-22-1094

JEFF NINES, Warden, et al.              :

    Respondents                         :

**MEMORANDUM OPINION**

George Murray, Petitioner, a Maryland State prisoner, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. ECF Nos. 1, 6, 6-1 (the "Petition"). Respondents, Warden Jeff Nines and the Maryland Attorney General, filed an answer to the Petition asserting that the claims are either procedurally defaulted, non-cognizable, or lack merit. ECF No. 10. No hearing is required to resolve the matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons below, the Petition is denied and a certificate of appealability shall not issue.

**I.     Background**

On September 4, 2013, Mr. Murray was indicted in the Circuit Court for Cecil County, Maryland and charged with four counts of attempted first degree murder, four counts of attempted second degree murder, four counts of first-degree assault, and one count of possession of a firearm by a disqualified person. ECF No. 10-1 at 4, 46. From February 10-12, 2014, Mr. Murray was

tried by a jury. The following evidence was adduced at trial, as recounted by the Appellate Court of Maryland ("Appellate Court"):[1]

> During the early evening of August 20, 2013, J.L. and his wife M.L. were preparing to leave their residence in Elkton, Maryland. As they were securing their two young children into the back of their family vehicle, a gray sport-utility vehicle playing loud music approached and stopped behind them. When the driver rolled down his driver's-seat window and asked J.L. "what [he] was looking at, . . . [and whether he] ha[d] a problem," a verbal exchange ensued. The driver exited the sport-utility vehicle, and a second individual standing in a nearby group of people started walking towards the driver carrying a bag. Feeling threatened, J.L. got into his vehicle.
>
> Once inside his vehicle, J.L. saw the individual carrying the bag hand a firearm to the driver. As M.L. was slowly pulling out of their parking spot, J.L. said "pull off. They got a gun." As they drove away, J.L. observed the driver chasing after the car with the firearm. When M.L. looked in her driver's-side mirror, she saw two men and "heard shots." As she drove away, bullets shattered the rear window and driver's-side front window. Once they had driven to safety at a nearby restaurant, J.L. called 911.
>
> When police officers arrived at the restaurant, J.L. provided them with a description of the shooter. Detective Jonathan Pruett transported J.L. back to the scene of the shooting in an unmarked police car to see if that person was there and, if so, whether J.L. could identify him. At the scene, J.L. positively identified [Murray]. Both J.L. and his wife provided written statements to police describing the events.
>
> A three-day jury trial began on February 10, 2014. The State produced several witnesses including J.L., M.L., and several of the responding officers. [Murray] testified in his own defense. According to his testimony, he was outside "shooting dice" with a group of about seven people when he observed a sport-utility vehicle come into Willow Court. He saw the vehicle "back up and then somebody was

---

[1]    In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Court of Appeals of Maryland to the Supreme Court of Maryland.  The voters also approved changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR.

> calling [his] name" and directing him to an altercation that had broken out between
> J.L. and the driver of the sport utility vehicle, whom he then realized was his
> brother. [Murray] walked over to J.L. and said "[i]f you got a problem you want to
> come in the street and fight like a man[?]" His brother then exited the sport-utility
> vehicle and J.L. entered his residence. When J.L. came back out his "hands [were]
> between [his] body and [his] pants," which caused [Murray] to believe J.L. had "a
> gun or something." After J.L. returned to his car and rolled down the window,
> [Murray] heard a gunshot and took cover on the ground.

ECF No. 10-1 at 109-111.

Mr. Murray was convicted of four counts of attempted second degree murder and possession of a firearm by a disqualified person. ECF No. 10-4 at 5-7. Sentencing was held on May 23, 2014. The circuit court sentenced Mr. Murray to 100 years' imprisonment. ECF No. 10-6 at 28.

Mr. Murray appealed his conviction to the Appellate Court. ECF No. 10-1 at 48-75. He asserted three grounds, as follows: (1) Mr. Murray received ineffective assistance of counsel who labored under a conflict of interest during his representation of Mr. Murray, (2) the trial court erred in admitting the identification testimony of M.L. when the identification had not been provided to the defense in discovery, and (3) the trial court erred in permitting the prosecutor to continually ask "were they lying" questions of Mr. Murray. *Id.* at 49. On February 26, 2016, the Appellate Court affirmed the convictions and sentence. *Id.* at 108-130. The Supreme Court of Maryland denied Mr. Murray's subsequent petition for a writ of certiorari. *Id.* at 132-143.

Mr. Murray filed a pro se Petition for Post-Conviction Relief in the Circuit Court for Cecil County, Maryland on March 23, 2017 (*id.* at 144-209), which was later supplemented by counsel. *Id.* at 210-222. He asserted the following claims:

    (1)    Trial counsel was ineffective for failing to object to the use of a multipart voir dire question that shifted the determination of the potential juror bias from the Court to the jurors themselves, which allowed the prospective

jurors to self-select as to the issue of bias or inability to be impartial, rather than to have this issue be determined by the Court (*id.* at 211);

(2)    Trial counsel Mr. Halter rendered ineffective assistance of counsel when he erroneously failed to present to the trial court through his proposed jury voir dire questions that were designed to bring out a specific area of juror bias concerning the use of a handgun in this case (*id.* at 149);

(3)    Trial counsel was ineffective for failing to object to the jury panel being composed of all Caucasian individuals (*id.* at 215);

(4)    Trial counsel was ineffective for failing to thoroughly investigate and to effectively cross-examine State witness J.L. (*id.* at 216);

(5)    Trial counsel was ineffective for failing to adequately discuss a plea offer with the Petitioner and to discuss with him the elements of the crimes with which he had been charged, and the possible risks of going to trial (*id.* at 217);

(6)    Trial counsel was ineffective for failing to advise the Petitioner that he was running for State's Attorney at the time of the Petitioner's trial (*id.* at 217);

(7)    Trial counsel was ineffective for failing to object and/or move for a mistrial based on repeated instances of improper comments made by the State during closing argument, specifically vouching for the credibility of witnesses (*id.* at 218);

(8)    Trial counsel Mr. Halter rendered ineffective assistance of counsel when he failed to object to the lack of unanimity among jurors (*id.* at 169);

(9)    Appellate counsel was ineffective for failing to raise as plain error the insufficient polling of the jury and the lack of unanimity of the verdict (*id.* at 220); and

(10)    The Petitioner is entitled to reversal of his convictions in light of the cumulative effect of the errors alleged herein. (*id.* at 220).

Following a hearing on Mr. Murray's post-conviction petition on August 13, 2021, (ECF No. 10-7), the circuit court denied the petition. ECF No. 10-1 at 223-255. Thereafter, Mr. Murray filed an application for leave to appeal (*id.* at 256-270), but it was denied by the Appellate Court. *Id.* at 271-273.

Mr. Murray filed his federal Petition on May 5, 2022.  ECF Nos. 1 and 6.  It is not entirely clear which issues he seeks to raise.  The initial petition did not state any grounds.  When prompted by Respondents' motion to dismiss, Petitioner supplied a Memorandum that incorporated the questions presented portion of his Application for Leave to Appeal the denial of Post Conviction Relief (ECF No. 6) along with the post-conviction court's opinion list of issues raised, (ECF No. 6-1).  He clearly asserts the grounds for relief which were the subject of the application for leave to appeal:  ineffective assistance of trial counsel for (1) failing to object to an improper compound voir dire question, (2) failing to request voir dire questions regarding jurors' perceptions of a defense witness and regarding strong feelings regarding a handgun (ECF No.  6 at 3-12), and (3) failing to object to an all-Caucasian jury (*id.* at 12-14)  He may also be attempting to assert the additional grounds presented to the post-conviction court but not raised in the application for leave to appeal: ineffective assistance of trial counsel for (4) failing to thoroughly investigate and to effectively cross-examine state witness J.L. (ECF No. 6-1 at 1), (5) failing to adequately discuss a plea offer with Mr. Murray, and discuss with him the elements of crimes with which he had been charged and possible risks of going to trial (*id.*), (6) failing to advise Mr. Murray that he was he was running for state's attorney at the time of trial (*id.*),  and (7) failing to object or move for a mistrial based on repeated instances of improper comments made by the state during closing argument,   specifically vouching for the credibility of witnesses (*id.*), (8) failing to object when the polling of the jury began at Juror No. 2 (*id.*), and (9) failing to object to Juror No. 8's response during polling of the jury (*id.*),).  He may also be asserting ineffective assistance of appellate counsel for failing to raise on appeal plain error in the insufficient polling of the jury and lack of unanimity of the verdict (*id.*) and, finally, cumulative error (*id).*  Respondents argue that the Petition should be dismissed because the first three grounds lack merit (ECF No. 10 at 29-38), and

the remaining claims are procedurally defaulted or non-cognizable in federal habeas review. *Id.* at 38-46.

## II.     Standard of Review

This court may grant a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  As the Fourth Circuit explained in *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009), "it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "reviewing a habeas petition that has already been adjudicated on the merits in state court [must] give considerable deference to the state court decision."  *Nicolas v. Att'y Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016).  If a state prisoner's claim has already been adjudicated on its merits, § 2254 restricts federal habeas relief to limited circumstances.  "Federal courts owe state tribunals 'significant deference' with respect to 'their determination that a state prisoner isn't entitled to habeas relief.'"  *Crockett v. Clarke*, 35 F.4th 231, 241 (4th Cir. 2022) (citation omitted).

Under 28 U.S.C. § 2254(d)(1), the prisoner must show that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  And, under § 2254(d)(2), the writ may be granted as to a decision that was "based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Therefore, a federal court is precluded from granting habeas corpus relief "'on a claim decided on the merits in a state court unless it determines the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the record evidence.'" *Crockett*, 35 F. 4th at 235; *see Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry)*, 529 U.S. at 379.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 364–65; *see* 28 U.S.C. § 2254(d)(1). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407.   For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams (Terry)*, 529 U.S. at 405; *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005).   However, a federal habeas court "'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.'" *Lovitt*, 403 F.3d at 178 (quoting *Williams (Terry)*, 529 U.S. at 411).

As the Supreme Court has explained, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000) (O'Connor, J., delivering the majority opinion with respect to Part II):

> [A] state-court decision can involve an "unreasonable application" of [the Supreme] Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application ... if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case. Second ... if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Under § 2254(d)(1), to be "unreasonable," the state court's application of that law must be "objectively unreasonable," not merely incorrect. *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020); *see White v. Woodall*, 572 U.S. 415, 419 (2014); *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

The petitioner must identify the "clearly established" legal principle on which he relies. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from its passing dicta. *See White v. Woodall*, 572 U.S. 415, 419 (2014). And the holding must be described with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). A holding at a "high level of generality" will not suffice. *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted); *see Metrish v. Lancaster*, 569 U.S. 351, 367–68 (2013). Moreover, circuit precedent cannot turn "'a general principle of Supreme Court jurisprudence into a specific legal rule'" that has not been "announced" by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

Section 2254(d)(2) of 28 U.S.C. requires a prisoner relying on an alleged factual error to show that the state court proceedings "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." *See Crockett*, 35 F.4th at 241.  Factual determinations are unreasonable when they are "'sufficiently against the weight of the evidence . . . .'" *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted).  In other words, the "federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not 'debatable among jurists of reason.'" *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) (emphasis in original) (internal citation omitted).

However, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (citation omitted); *see Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts.  *Id.* This standard is "meant to be" one that is "difficult to meet…" *Harrington*, 562 U.S. at 102.

Of relevance, the habeas court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicolas*, 820 F.3d at 129; *see Harrington*, 562 U.S. at 100-01; *Walters*, 18 F.4th at 442; 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

A § 2254 petition must set forth specific grounds for relief. *Samples v. Ballard*, 860 F.3d 266, 273 (4th Cir. 2017); *see also Folkes v. Nelsen*, 34 F.4th 258, 267 (4th Cir. 2022). Claims by a state prisoner that he is in custody in violation of the Constitution or the laws of the United States "implicate concerns about federalism and comity[.]" *Crockett*, 35 F.4th at 241. Concerns of comity and federalism "reach their apex" when a state court has previously ruled on an alleged wrongful conviction. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020). Therefore, "the standard for such claims is exceedingly high." *Crockett*, 35 F.4th at 241; *see Burt v. Titlow*, 571 U.S. 12, 19 (2013). Indeed, the Fourth Circuit has characterized the habeas standard as "an extraordinary standard of review." *Crockett*, 35 F.4th at 235.

Of import, "[t]he State possesses primary authority for defining and enforcing the criminal law, and for adjudicating constitutional challenges to State convictions." *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (internal quotation marks and citations omitted. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted). Therefore, § 2254 "is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams (Terry)*, 529 U.S. at 383; *see Walters v. Martin*, 18 F.4th 434, 441 (4th Cir. 2021). Accordingly, the habeas court may not disturb a state court judgment "absent an error that lies 'beyond any possibility for fair-minded disagreement.'" *Mays v. Hines*, 592 U.S. 385, 386 (2021) (per curiam) (citations omitted); *see Walters*, 18 F.4th at 441.

In assessing a petitioner's habeas claims, the district court looks to the opinion of "'the last reasoned decision of a state court addressing the claim.'" *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022) (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)), *cert. denied sub nom. Chestnut v. Allen*, 143 S. Ct. 2517 (2023).  And, the federal court's review of a state court decision under § 2254 is conducted "through a narrow lens . . . ." *Mahadi v. Stirling*, 20 F.4th 846, 854 (4th Cir. 2021).  It requires a review of "the record in its entirety," as it existed before the last state court to consider the matter.  *Id.*; *see Mays*, 592 U.S. at 392; *Hyman v. Hoekstra*, 41 F.4th 272, 274 (4th Cir. 2022).

Mr. Murray faces an additional hurdle if he alleges a trial court error that the State court subjected to harmless error review.  Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA.  *Brown*, 596 U.S. 118.

*Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial.  *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  A "'substantial or injurious effect or influence'" means "actual prejudice." *See Brecht*, 507 U.S. at 637–38.  "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests."  *Brown*, 596 U.S. at 134 (emphasis in *Brown*).

In sum, to succeed on any of his trial error claims, Mr. Murray must convince this federal habeas court that there is "'grave doubt'" about "whether the trial error affected the verdict's outcome," *id.* at 135-36, and demonstrate that every "fairminded jurist would agree that an error was prejudicial." *Id.* at 136.

As discussed in detail below, these standards foreclose Mr. Murray's claims.

## III.    Procedural Default

Procedural default occurs when a habeas petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari. *See* Md. Code (2020 Repl. Vol., 2024 Supp.), §§ 12-201, 12-301 of the Courts and Judicial Proceedings Article ("C.J."). To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted, due within ten years of the date of sentencing. *See* Md. Code (2018 Repl. Vol., 2024 Supp.), §§ 7-101–7-103 of the Criminal Procedure Article ("C.P."). After a decision on a post-conviction

petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. C.J. § 12-202.

As noted, procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Maryland law does not permit a second and successive state petition for post-conviction relief. *See* C.P. § 7-103(a).

Respondents argue that the grounds asserted in Mr. Murray's Petition for Postconviction Relief, that were not included in his application for leave to appeal, are procedurally defaulted. ECF No. 10 at 38-44. The court agrees.[2] *See Pevia v. Bishop*, No. CV ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims.")

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded

---

[2]    Mr. Murray included one, ineffective assistance of counsel for laboring under a conflict of interest, in his direct appeal. ECF No. 10-1 at 49. However, the Appellate Court declined to address the merits of the claim, finding it was more appropriate for postconviction review. *Id.* at 111-119. Mr. Murray included this ground in his postconviction petition (*id.* at 217) but did not include it in his motion for leave to appeal to the Appellate Court. *Id.* at 256-270.

counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).

To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494.

Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default bar applies here. Mr. Murray was provided an opportunity to respond to Respondents' procedural default defense (ECF No. 10), and he has failed to respond. The court's independent review of the record reveals no grounds for an exception.

In any event, as discussed below, even if these additional grounds were not procedurally defaulted, they are subject to dismissal for lack of merit.

## IV. Discussion

Mr. Murray's grounds for relief are based on ineffective assistance of counsel. The Sixth Amendment to the Constitution guarantees a criminal defendant the right to effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *United Staters v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a

14

petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88; *see Williams (Terry)*, 529 U.S. at 390; *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).

First, the petitioner must show that counsel's performance was deficient.  Second, the petitioner must show that he was prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229.  The petitioner must prove his claim by a preponderance of the evidence.  *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (4th Cir. 2021; *United States v. Pettiford*, 612 F.3d 270, 277 (2010).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms."  *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207–08; *United States v. Richardson*, 820 F. App'x 225, 225 (4th Cir. 2020); *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227.  The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar."  *Buck*, 580 U.S. at 118.  Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'"  *Id.* (citation

omitted).  The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 669.  Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight.  *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).  Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one."  *Harrington*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).  Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Harrington*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).  Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense."  *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694; *see also Buck*, 580 U.S. at 119.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the

proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. 154, 155 (2024) (death penalty case).

A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Strickland*, 466 U.S. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### A.    Voir Dire

Mr. Murray contends that his trial counsel was ineffective for failing to object to an inappropriate compound voir dire question:

> Do any of you harbor any prejudices or biases based on race or any other factor that
> would prevent you from rendering a fair verdict in this matter?

ECF No. 10-2 at 20. Mr. Murray also claims that his attorney was ineffective for failing to request

a voir dire question on whether the jurors would give less weight to defense witnesses and a question regarding strong feelings on the use of handgun.  ECF No. 6 at 3-12.

Mr. Murray argues, as he did in his postconviction petition, that the questions violated *Dingle v. State*, 361 Md. 1 (2000), which prohibits questions that require the prospective jurors to evaluate their own bias.  The circuit court denied Mr. Murray's claim.  ECF No. 10-1 at 233-241. Upon review of the applicable precedent, the court finds that the circuit court's conclusion was neither contrary to nor an unreasonable application of federal law.

The law on compound jury selection questions evolved over a fourteen-year period in Maryland, starting with the decision in *Dingle v. State* and concluding on February 21, 2014, with the decision in *Pearson v. State*, 437 Md. 350 (2014).  In *Dingle*, the Appellate Court of Maryland held that the trial court erred when it asked several two-part questions concerning whether jurors had certain experiences or associations and whether those experiences and associations would affect their ability to be fair and impartial.  *Dingle,* 361 Md. at 8-9.  The *Dingle* court found the questions objectionable because they "endorse[] a voir dire process that allows, if not requires, the individual voir dire venire person to decide his or her ability to be fair and impartial...the procedure…shifts from the trial judge to the venire the responsibility to decide juror bias."  *Id.* at 21.

Although the Appellate Court of Maryland rejected voir dire questions that required jurors to decide their own bias, in 2002 it approved the phrasing of a self-assessment question in *State v. Thomas*, 369 Md. 202 (2002).  The issue on appeal in *Thomas* was whether the trial court erred in refusing to ask, "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at trial where narcotics violations have been alleged?"  The Appellate Court of Maryland found that the trial court erred by not permitting the question.  After *Thomas* was decided, "[as] of May 10, 2002…the

state of the law appeared to be that *Dingle* did not apply to a 'strong feelings' compound question."
*State v. Davis*, 249 Md. App. 217, 226 (2021).

Following *Thomas*, the Appellate Court of Maryland affirmed similar two-part questions in
*Sweet v. State*, 371 Md. 1 (2002) ("Do the charges stir up strong emotional feelings in you that would
affect your ability to be fair and impartial in this case?"); *Baker v. State*, 157 Md. App. 600 (2004)
("Do you have any bias or prejudice concerning handguns which would prevent you from fairly
weighing the evidence in this case?"); *Singfield v. State*, 172 Md. App. 168 (2006) ("Does any
member of the jury panel feel that the nature of this case would make it difficult or impossible for you
to render a fair and impartial verdict, specifically because this case involves murder with a
handgun?"); and *State v. Shim*, 418 Md. 37 (2011) ("Does any member of the jury have such strong
feelings about [the charges] that it would be difficult for you to fairly and impartially weigh the
facts?"); *Wimbish v. State*, 201 Md. App. 239, 267 (2011) ("Does any member of the panel have any
fixed opinions, biases or prejudices, about people of a particular race which would affect your ability
to render a fair and impartial verdict in this case based solely on the law and the evidence?").

On February 21, 2014, the Appellate Court of Maryland, in *Pearson v. State*, 437 Md. 350
(2014) abrogated the precedent that permitted two-part "strong feelings" questions.  The *Pearson*
court recognized that while *Dingle* prohibited two-part questions that required the jurors to assess
their own bias, the "strong feelings" line of cases that followed and specifically permitted such two-
part questions created a conflict in the law.  *Id.* at 361-363.  Thus, there was a period of time in
Maryland, between the date of the *Dingle* decision in 2000 and the date of the *Pearson* decision in
2014, when two-part, "strong feelings" questions were permissible during voir dire.

Mr. Murray's trial concluded nine days before the *Pearson* decision was issued, which was
during the timeframe in Maryland when two-part "strong feelings" questions that required the jurors

to conduct a self-assessment of bias were permitted in Maryland.  The phrasing of the question during Mr. Murray's voir dire was permissible at the time.  Accordingly, the question asked during voir dire was not prohibited by Maryland law at the time of Mr. Murray's trial, and his trial counsel was not deficient for failing to object.

The circuit court also found that Mr. Murray's trial counsel was not ineffective for failing to request a voir dire question on the weight accorded to defense witnesses or a question about strong feelings on the use of a handgun, because the case law did not pose an obligation on counsel to request the questions and Mr. Murray could not demonstrate prejudice.  ECF No. 10-1 at 237-241.  As for the deficiency prong of the *Strickland* analysis, when it comes to Maryland law, this court is bound to defer to the circuit court's interpretation.  *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("It is beyond the mandate of federal habeas courts, however, to correct the interpretation by state courts of a state's own laws.").  As for the prejudice prong of the *Strickland* analysis, the record supports the circuit court's conclusion that the outcome of the trial would not have been different if Mr. Murray's counsel had requested a voir dire question about defense witnesses or handguns.

J.L. testified that on August 20, 2013, he was getting ready to leave his house and securing his two young children in their car seats.  ECF No. 10-2 at 86, 88.  Mr. L. testified that Mr. Murray drove up in a gray vehicle and a verbal altercation ensued.  *Id.* at 89.  Mr. L. testified that he saw Mr. Murray exit his vehicle and the passenger of Mr. Murray's vehicle passed Mr. Murray a handgun.  *Id.* at 89-92.  Mr. L. entered his vehicle, and with his wife driving, they exited the area.  *Id.* at 92. Mr. L. saw Mr. Murray point the gun at his car, and he heard shots.  *Id.*  Mr. L.'s wife, M.L., also testified at trial.  *Id.* at 107-130.  Her account largely mirrors her husband's.  M.L. testified that she witnessed the argument between her husband and Mr. Murray.  *Id.* at 108-111, 115.  After her husband got in the car and they drove away, she heard her husband say, "they got a gun," and then she heard shots.

*Id.* at 113-114.

William Oney testified that he witnessed the altercation while walking his dog.  *Id.* at 135-146.  Mr. Oney saw the driver exit a silver vehicle and argue with a man in a black Cadillac.  *Id.* at 136.  He also saw the passenger of the silver vehicle hand the driver a gun, which the driver fired at the Cadillac.  *Id.*  Mr. Oney testified that the man who fired the gun was wearing a white t-shirt.  *Id.* at 141.

Mr. Murray testified in his own defense.  ECF No. 10-3 at 26-55*.*  He denied shooting at the L's car, but admitted that he was in the area and admitted that he was wearing a white t-shirt.  *Id.* at 28-35, 39.  Detective Jonathan Pruett testified that Mr. Murray made two inculpatory statements while he was in custody.  ECF No. 10-2 at 165-166.  At first Mr. Murray said, "I wasn't there so I don't have anything to say."  Later, Mr. Murray said, "did he tell you he pulled a gun first."  *Id.*

Considering the substantial evidence offered at trial supporting Mr. Murray's guilt, the court cannot say that the circuit court's conclusion that Mr. Murray was not prejudiced by his trial counsel's performance during voir dire was unreasonable.  The circuit court's dismissals of these grounds were neither contrary to, nor an unreasonable application of, federal law.

### B.    Composition of Jury

Mr. Murray contends that his trial counsel was ineffective for failing to object to his all-Caucasian jury.  ECF No. 6 at 12-14.  The circuit court dismissed Mr. Murray's same postconviction claim, concluding:

The Fourth Circuit Court of Appeals in *Truesdale v. Moore*, 142 F.3d 749(1998) provides instruction:

> To make out a prima facie case for a violation of the Sixth Amendment right to a jury venire that is a "fair cross-section" of the community, Truesdale must establish that (1) a "distinctive" segment of the community (2) is "substantially underrepresented" in the jury pool (3) as a result of "systematic exclusion" of the group.

> *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668–69, 58
> L.Ed.2d 579 (1979). Id at p. 755.
>
> ***
>
> The Supreme Court has never gone so far as to hold that the
> constitution requires venires to be, statistically, a substantially true
> mirror of the community." quoting *United States v. Cecil*, 836 F.2d
> at 1445–46 (quoting *Barber v. Ponte*, 772 F.2d 982, 997 (1st
> Cir.1985). To allow Truesdale to substitute evidence of substantial
> underrepresentation for evidence of systematic exclusion would go
> a long way towards requiring perfect statistical correspondence
> between racial percentages in the venire and those in the
> community. Such a rule would exalt racial proportionality over
> neutral jury selection procedure.
>
> Petitioner's claim that he was not tried by a jury of his peers because the jury panel
> did not have a proportional number of African Americans to the county population
> does not constitute a denial of Petitioner's Sixth Amendment rights. He fails to
> offer any evidence that African Americans were underrepresented in the jury as a
> result of systematic exclusion of the group. Petitioner is unable to establish that he
> was not tried by a jury of his peers. As such, Petitioner has failed to offer evidence
> that his counsel had a reasonable basis upon which to pose an objection to the panel.
> Petitioner's attorney also notes that if he had been presented with a situation of an
> all-white jury venire, he had in the past and would have made an objection for the
> record.

ECF No. 10-1 at 242-243.

Mr. Murray alleges that his counsel was ineffective solely based on the fact that his petit

jury was comprised entirely of Caucasians.  But, the United States Supreme Court has stated that

"[a] defendant has no right to a petit jury composed in whole or in part of persons of his own race."

*Batson v. Kentucky*, 476 U.S. 79, 79 (1986).  Mr. Murray has offered no evidence of intentional

discrimination, nor has Mr. Murray shown that the venire, from which the jury was selected, was

not representative of Cecil County, or that any underrepresentation is due to a systematic exclusion

of a group in the jury-selection process.  *Berghuis v. Smith*, 559 U.S. 314, 319 (2010).  It cannot

be said that trial counsel's failure to object to the jury selection falls below any objective standard

of reasonableness.  Therefore, the circuit court's consideration and ultimate denial of this ground

was neither unreasonable nor contrary to clearly established federal law.

### C.    Cross-Examination of J.L.

Mr. Murray contends that his trial counsel was ineffective for failing to adequately cross-examine J.L.  ECF No. 6-1 at 1.  Mr. Murray argues that his trial counsel failed to investigate when he told him that J.L. had an active warrant for his arrest at the time of trial.  ECF No. 10-1 at 216-217.  At the postconviction hearing, Mr. Murray's trial counsel testified that he "emphatically…did not have knowledge that there was a current warrant for Mr. L . . ." ECF No. 10-7 at 57-58.  The circuit court dismissed the claim, concluding "Petitioner has not offered any evidence that the witness had a criminal record or received any benefits as a result of the testimony he provided. After a review of the transcript, the court is unable to find any evidence that Petitioner's attorney failed to adequately cross-examine this witness."  ECF No. 10-1 at 243.

Mr. Murray has failed to prove the factual basis of his allegation that his counsel was ineffective because he never offered any evidence of the existence of a warrant for J.L. at the time of trial.  Moreover, the scope of cross-examination is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel.  *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir. 1983).  Considering the deference owed, both to trial counsel's tactical decisions and to the circuit court's conclusions, Mr. Murray's claim that his counsel was ineffective for inadequate cross-examination of J.L. is without merit. If this ground was not procedurally defaulted it would be dismissed for lack of merit.

### D.    Discussion of Plea Offer

Mr. Murray contends that his trial counsel was ineffective for failing to discuss properly the state's plea offer with him prior to trial.  ECF No. 6-1 at 1.  Mr. Murray testified at the postconviction hearing that his trial counsel informed him the day before trial that the state had offered a plea deal which involved a guilty plea to attempted second degree murder with a sentence

of thirty years.  ECF No. 10-7 at 22.  Mr. Murray testified that he rejected the plea deal because his trial counsel told him that he was "a hundred percent sure he could beat the case."  *Id.*  Mr. Murray claimed that his trial counsel never advised him of the maximum possible sentence if he was found guilty at trial.  *Id.*  Mr. Murray's trial counsel, Michael Halter, also testified at the postconviction hearing, and contradicted Mr. Murray's account of the plea discussions.  *Id.* at 45-65.  Mr. Halter testified that he did advise Mr. Murray about the maximum penalties (*id.* at 46), and he would never tell a client to go to trial because he was absolutely going to win.  *Id.* at 47.  Mr. Halter recalled that he believed that the case was "triable" and probably conveyed that opinion to Mr. Murray.  *Id.* at 60.

The circuit court denied Mr. Murray's claim.  ECF No. 10-1 at 244-246.  The circuit court found that Mr. Murray failed to offer evidence that his trial counsel provided him with any "incomplete, misleading or incorrect information," (*id.* at 245) and citing *Lafler v. Cooper*, 566 U.S. 156, 174, (2012), concluded that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."  *Id.* at 246.

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process.  *See Missouri v. Frye*, 566 U.S. 134 (2012).  Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. *Lafler*, 566 U.S. 156 (internal quotation marks omitted).  As explained in *Hill*, 474 U.S. at 57, the two-part test set forth in *Strickland*, 466 U.S. 668, governs ineffective assistance claims involving the plea process.  Pursuant to that test, to prevail on an ineffective assistance claim, a petitioner must establish that (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the defense.  *Strickland,* 466 U.S. at 687, 694.

24

Mr. Murray testified that his counsel provided him bad advice when he said that he could "a hundred percent" win the case and failed to inform him of the maximum penalty if he was found guilty at trial. Mr. Murray's trial counsel disputed this testimony, and the circuit court rejected Mr. Murray's version of events when it concluded that Mr. Murray failed to show that his trial counsel provided him with any incomplete, misleading, or incorrect advice. The circuit court's credibility determinations are entitled to deference. *Cagle v. Branker,* 520 F.3d 320, 324 (4th Cir.2008) (citing 28 U.S.C. § 2254(e)(1) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); *see also Marshall v. Lonberger,* 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to re-determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). The fact that Mr. Murray was not ultimately successful at trial does not render his counsel's opinion that his case was "triable" deficient performance. *See United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) ("It is 'all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' Thus, an evaluation of attorney performance requires that 'every effort be made to eliminate the distorting effects of hindsight.'" (quoting *Strickland*, 466 U.S. at 689)).

Mr. Murray has failed to show that the circuit court's dismissal of Ground Four was contrary to or an unreasonable application of *Strickland*. Ground Four would be dismissed on the merits if it was not procedurally defaulted.

### E.     Conflict of Interest

Mr. Murray contends that his trial counsel was ineffective for laboring under a conflict of interest. ECF No. 6-1 at 1.  Particularly, Mr. Murray argues that his trial counsel failed to inform him that he was a candidate for state's attorney.   At the postconviction hearing, Mr. Murray testified that he would have hired different counsel if he had known, stating "I feel there was a conflict of interest.  I don't know whose side he's on, I don't know if he's on my side, or he's trying to appease the State and the police officers."  ECF No. 10-7 at 20.  Mr. Murray's trial counsel, Michael Halter, testified that he did not dispute the appellate record documentation that he filed to run for state's attorney nine days after Mr. Murray's trial (*id.* at 52) and said, "I still put out 110 percent, I still do my job under the professional code of conduct and represent my clients to the best of my ability, because of course at that point in time I am a defense attorney." *Id.* at 53.

The circuit court denied Mr. Murray's postconviction claim, finding:

> …Petitioner has failed to offer any evidence beyond mere conjecture that his attorney's plan in the future to run for the Office of State's Attorney created an actual conflict or that his performance was anything less than competent.  There was no evidence offered that supported the claim that his attorney's performance was deficient because of his future plans.

ECF No. 10-1 at 246-247.

"A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest."  *Mickens v. Taylor* (*Mickens I*)*,* 240 F.3d 348, 355 (4th Cir.2001) (en banc).  A claim for ineffective assistance of counsel based on a conflict of interest "presents a special case" in which a court must apply a different standard than the test applied under *Strickland. Mickens I,* 240 F.3d at 355.  "To establish ineffective assistance of counsel on conflict of interest grounds, a petitioner must establish that (1) his attorney labored under 'an actual conflict of interest' that (2) 'adversely affected his lawyer's performance.'" *Id.*

(citing *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980)).  Adverse effect will not be presumed from the mere existence of a conflict of interest.  *Rubin v. Gee,* 292 F.3d 396, 401 (4th Cir.2002).  "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."  *Mickens v. Taylor* (*Mickens II*)*,* 535 U.S. 162, 171 (2002) (quoting *Cuyler,* 446 U.S. at 349–50).  Rather, if the two-part test is satisfied, prejudice is presumed.  *Mickens I,* 240 F.3d at 355 (citing *Cuyler,* 446 U.S. at 349).

To satisfy the first prong of the *Cuyler* test—the existence of an actual conflict of interest—a habeas petitioner must show that [his] interests diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action.'"  *Stephens v. Branker,* 570 F.3d 198, 209 (4th Cir.2009) (quoting *Gilbert v. Moore,* 134 F.3d 642, 652 (4th Cir.1998) (en banc)).  To satisfy the second prong, a petitioner must then demonstrate that "the actual conflict of interest compromised [her] attorney's representation."  *Id.*  "[A]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  *Rubin,* 292 F.3d at 401 (quoting *Mickens II,* 535 U.S. at 172 n. 5).  The petitioner must establish adverse effect by: (1) identifying "a plausible defense strategy or tactic that his defense counsel might have pursued;" (2) showing that the defense strategy or tactic "was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision;" and (3) establishing "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Mickens I,* 240 F.3d at 361 (internal citations omitted).

Mr. Murray has failed to demonstrate that his trial counsel chose to forgo an objectively reasonable trial strategy or tactic because he was contemplating a candidacy for state's attorney. As noted by the circuit court, Mr. Murray offers nothing more than conjecture to support the allegation that his trial counsel had a conflict of interest.  The circuit court's conclusion that this

ground is without merit is neither contrary to, nor an unreasonable application of federal law. This ground would be dismissed on the merits if it was not procedurally defaulted.

### F.    Failure to Move for Mistrial

Mr. Murray contends that his trial counsel was ineffective for failing to object or move for a mistrial when the prosecutor vouched for the credibility of witnesses during closing argument. ECF No. 6-1 at 1.  In his postconviction petition (ECF No. 10-1 at 164-169), Mr. Murray listed the following passages from the prosecutor's closing argument as objectionable:

> Where we do differ is whether or not the defendant was the individual responsible for those crimes. And I submit to you that, in fact, he was. That he was. How do we know? Let's start with J[] L[]'s testimony. Credible testimony of J[] L[]. ECF No. 10-3 at 91.
>
> ***
>
> M[] L[] also testified, credibly, if I may add. *Id.* at 93
>
> ***
>
> To add to her credibility, not take away from, but to add, counsel is right, this case has been pending for a while, and if they got their stories together, as counsel wants you to believe, think about what she could have said. Think about what she could have said if she came in here to lie. She could have said just that, Yeah, my eyes were closed but at some point, I actually had to open them and when I opened them it was that defendant I saw shooting at my vehicle. She never said that. She never said that. Because she was here to tell the truth. *Id.* at 112-113.

The circuit court concluded that Mr. Murray failed to demonstrate that his attorney's performance was deficient because "comments are permissible if the conclusions may be inferred from the evidence introduced and admitted at trial." ECF No. 10-1 at 249.

In arguments to the jury, "[i]t is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses." *United States v. Sanchez,* 118 F.3d 192, 198 (4th Cir.1997); *United States v. Lewis,* 10 F.3d 1086, 1089 (4th Cir.1993). "Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." *Sanchez,* 118 F.3d at 198.  While vouching and bolstering

are always inappropriate, "[i]mproper remarks during closing argument do not always mandate retrial. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 198 *citing United States v. Mitchell,* 1 F.3d 235, 240 (4th Cir.1993). In determining whether a prosecutor's argument prejudicially affected a petitioner, the court must consider: "(1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comment; and (4) whether the comments were deliberately made to divert the jury's attention." *Sanchez,* 118 F.3d at 198.

When viewed in context, the prosecutor's comments do not constitute improper vouching. The prosecutor summarized J. and M.L's testimony and argued that the content of the testimony suggested its truthfulness. ECF No. 10-3 at 91-113. Even if the comments were improper, Mr. Murray would not be entitled to relief. Considering the strength of the evidence against Mr. Murray, discussed in Section IV(A), in the context of the entire trial, the court cannot say that the isolated comments in closing infected the trial to an extent that Mr. Murray was denied due process.

As such, Mr. Murray cannot demonstrate that his trial counsel's performance was deficient, or he suffered any prejudice, and if this ground was not procedurally defaulted, it would be dismissed for lack of merit.

### G.    Jury Poll

Mr. Murray asserts several grounds arising from the jury poll. He contends that his appellate counsel was ineffective for failing to urge on direct appeal the irregularities with polling of the jury and non-unanimity. ECF No. 6-1 at 1. He also contends that his trial counsel was ineffective for failing to object to the polling beginning with Juror No. 2, and for failing to object to Juror No. 8's response to the polling. *Id.*

After the jury foreperson read the verdict on February 12, 2014, Mr. Murray's trial counsel requested that the jury be polled. ECF No. 10-4 at 7.  The judge instructed the jury to begin with Juror No. 2 because "[t]he foreman has already stated the verdict."  *Id.*  Each juror was asked if the verdict was their verdict, except Juror No. 8, who was only asked "… did you hear your foreperson's verdict?"  *Id.* at 9.  After the polling was complete, the trial judge asked the clerk to harken the verdict.  *Id.* at 10.  After the verdict was read, the jurors responded, "yes."  *Id.* at 10-11.

Mr. Murray argued in his postconviction petition, as he does in his federal habeas petition, that his trial counsel should have objected to the irregularities in the polling and his appellate counsel should have raised the issue for plain error review on direct appeal.  ECF No. 10-1 at 169-177.  The circuit court conducted a thorough evaluation of the state of Maryland law on the availability of relief based on a procedural flaw in jury polling.  *Id.* at 249-252.  The circuit court concluded, "[t]he verdict, once hearkened, was sufficient for the finding of a unanimous verdict" and the appellate court would not have reviewed the issue for plain error.  *Id.* at 252-254.

In the context of ineffective assistance of appellate counsel, to establish *Strickland's* performance prong, a movant must first show that his "counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Counsel is "not obligated to assert all nonfrivolous issues on appeal," *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000), and courts presume that the appellate counsel "decided which issues were most likely to afford relief on appeal," *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993).  The "prejudice" element of the *Strickland* standard is satisfied by a showing of a reasonable probability defendant would have prevailed on appeal but for appellate counsel's deficient performance.  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).  "Generally, only when ignored issues are clearly stronger than those

presented, will the presumption of effective assistance of counsel be overcome." *Id.* at 288 (internal quotation marks and citation omitted).

The circuit court concluded that Mr. Murray could not demonstrate either of *Strickland's* prongs because, although the jury polling was irregular, harkening of the jury was sufficient to establish unanimity under Maryland law. Noted above, this court is bound to defer to the circuit court's interpretation of Maryland law. *Sharpe*, 593 F.3d at 383. For this reason, Mr. Murray cannot establish that the outcome would have been different if his trial counsel would have lodged an objection to the jury polling or his appellate counsel would have raised the issue on appeal.

The circuit court's adjudication of these grounds was neither contrary to nor an unreasonable application of *Strickland*. If these grounds for relief were not procedurally defaulted, they would be dismissed because they lack merit.

## H.     Cumulative Error

Mr. Murray alleges he is entitled to habeas relief based on cumulative error. ECF No. 6-1 at 1. The circuit court dismissed Mr. Murray's same postconviction claim, concluding that he failed to establish that he was deprived of a fair trial. ECF No. 10-1 at 254. Respondent argues that this ground is non-cognizable in federal habeas review. ECF No. 10 at 45-46.

Ineffective assistance of counsel claims must be reviewed individually rather than collectively. *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). Moreover, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be *constitutional error*, not the cumulative effect of all of counsel's actions deemed deficient." *Id.* at 852 n.9 (emphasis added). Because the court has concluded that trial counsel did not provide ineffective assistance of counsel, a cumulative error analysis is inappropriate, and the circuit court's rejection of this claim for lack of merit is neither contrary to nor an unreasonable

application of federal law.  This ground would be dismissed for lack of merit if it was not procedurally defaulted.

## V.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Mr. Murray has failed to satisfy this standard on any of his claims.  Therefore, a certificate of appealability shall not issue.

## VI.    Conclusion

For the foregoing reasons, Mr. Murray's Petition for writ of habeas corpus is denied and a certificate of appealability will not be issued.  A separate Order follows.


June 9, 2025      
Date

_____
                    /s/
DEBORAH K. CHASANOW
United States District Judge